USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  3/12/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**THE INSURANCE COMPANY OF THE**
**STATE OF PENNSYLVANIA,**

                              **Plaintiff,**

                    **-against-**

**FREEMAN DECORATING COMPANY,** *et*
*al.*,

                              **Defendants.**

**23-CV-00416 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Insurance Company of the State of Pennsylvania ("Plaintiff" OR "ICSOP")

bring this action against Defendants Freeman Decorating Company and Freeman Decorating

Services, Inc. ("Defendants" OR "Freeman") for breach of contract.  ECF No. 1 ("Compl.").

Plaintiff's motion for summary judgment is fully briefed.  *See* ECF Nos. 25-28, 34-38.  For the

reasons stated below, the Parties' motion for summary judgment is **GRANTED**.

## BACKGROUND

### I.        Procedural Background

This case is a follow-on to a series of state court actions involving the Parties.  These

earlier actions include a personal injury lawsuit filed by one of Defendants' employees, William

McCann, in the Supreme Court of New York, County of Queens against the hotel chain Hilton

("Action 1") and a second action filed in the Supreme Court of New York, County of New York

against defendants HLT NY Hilton LLC, Legal Tech, Inc. ("Legal Tech"), ALM Media. Inc.

("ALM"), RAV Security Services, LTD. and Plumb Door of New York City, Inc. ("Action 2").

*See* ECF No. 26 ("Beer Decl.") Ex. 6-7.  These actions were consolidated (hereafter, the

"Underlying Actions") in New York County and each asserted claims for negligence against the

defendants. *Id.* Following the consolidation, Hilton filed a third-party complaint against Freeman Inc. and others asserting claims for contribution and breach of contract. *Id.* at Ex. 9. Interestingly, Freeman moved for and was granted a dismissal of Hilton's claim for breach of contract for failure to provide additional insured coverage on the grounds that "Freeman procured insurance covering [Hilton]." *Id.*, Ex. 26 at ¶¶ 7-10, 12; *see also* ECF No. 39.

A few months later, following communications with the hotel brand, ICSOP agreed to provide a defense and indemnity to Hilton in the Underlying Actions. *Id.* at Ex. 18-20. The Underlying Actions ultimately settled in the amount of $2.05 million, with Plaintiff providing $1.2 million towards settlement on behalf of Hilton and the other co-defendants providing the difference. *Id.* at Ex. 21. Inclusive of costs and the settlement amount, Plaintiff expended over $1.4 million in the Underlying Actions.

Plaintiff issued several invoices to Defendants, seeking to recover the amount they expended in the Underlying Actions. *Id.* at Ex. 22-25. Defendant failed to respond to any of the notices or issue reimbursement, so Plaintiff filed the instant suit seeking recovery of those funds on January 17, 2023. *See* Compl. Defendants filed an Answer on April 19, 2023. ECF No. 6. Upon letter motion of the Parties, the Court agreed to hold discovery in abeyance until the decision of the present motion. ECF Nos. 13, 19. Plaintiff moved for summary judgment on July 20, 2023. ECF No. 25; *see also* ECF No. 27 ("Mem."). Defendants filed their opposition to summary judgment on August 28, 2023. ECF No. 34 ("Opp."). Plaintiff filed a reply brief on September 25, 2023. ECF No. 37 ("Reply").

## II.     Factual Background

### A.  The Parties' Insurance Policy

The Parties agree as to the operative facts in this case. *See* Opp. at 6. On May 27, 2010,

Plaintiff issued to Defendant a commercial general liability insurance policy with a payout limit of $3,000,000 for the policy period of April 1, 2010 through April 1, 2011 (the "Policy"). Beer Decl. Ex. 1 at 1-3, 87-88. Under the Policy's terms, Defendant would be required to "reimburse [Plaintiff] . . . for any amounts [they] have so paid as damages, benefits or Medical Payments" up to the policy's deductible limits. *Id.* at 52. The Policy also stated that Defendants "must reimburse [Plaintiff] . . . for any payment [Plaintiff] make in good faith on behalf of any person or organization insured under any policy to which this endorsement applies." *Id.* at 53. Defendants' reimbursement obligations would also apply to any of the following costs Plaintiff incurred on their behalf:

> all fees for service of process and court costs and court expenses; pre- and post-judgement interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you, or to the protection and perfection of your or our subrogation rights.

> *Id.* at 54.

The Policy also contained two additional insured endorsements. The first, which applied only to claims of liability for "bodily injury, property damage, or personal and advertising injury," stated that "any person or organization to whom [Defendants] become obligated to include as an additional insured under the policy as a result of any contract or agreement [Defendants] enter[s] into." *Id.* at 25. The second applied to "[a]ny person or organization to whom [Defendants] become obligated to include as an additional insured under this policy, as a result of any contract or agreement [Defendants] enter into which requires [Defendants] to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of

[Defendants'] operations or premises owned or rented to [Defendants]." *Id.* at 44. The latter additional insured endorsement could "not exceed the lesser of" either "[t]he coverage and/or limits of" the Policy or those set by "said contract or agreement" whereas the former was limited only to the full $3 million Policy limit. *Id.*

B. Defendants' Vendor Contract

On January 1, 2010, Defendant Freeman Inc. entered into a vendor service agreement with Hilton ("Vendor Contract") under which Freeman Inc. would provide "full-service convention and event service contractor" services. Beer Decl. Ex 2. at 1. The Vendor Contract required Freeman Inc. to obtain and furnish to Hilton general liability insurance with a per occurrence limit of $1 million. *Id.* The Vendor Contract also stated that "[e]ach such insurance policy . . . shall name the Indemnitees [*sic*], as defined the STANDARD TERMS AND CONDITIONS and each of them, as additional insureds and shall by specific endorsement acknowledge the insuring of the contractual liabilities assumed by [Defendants] hereunder in Paragraph 14." *Id.* Paragraph 14, entitled "INDEMNIFICATION" defined the "Indemnitees" to include "Hotel, Hilton Hotels Corporation, its hotels and each of their owners, partners, subsidiaries, affiliates, franchisees, guests and groups, and each of such persons' or entities' officers, directors, agents, and employees." *Id.* at 6. The Vendor Contract stated that Defendants would indemnify the Indemnitees for:

> any and all allegations, demands, claims, liabilities, judgments, orders, damages,
> fines, penalties or costs of whatsoever nature (including reasonable attorneys'
> fees), and whether by reason of death of or injury to any person . . . ("Claims"), to
> the extent arising out of or in any way connected with this Agreement, the
> Services provided by Vendor [Freeman Inc.] or any subcontractors of Vendor
> hereunder or any related act or failure to act by or Vendor Parties, . . . except for
> the negligence or willful misconduct of the Indemnities or any other party.

> *Id.*

C. <u>The Accident & Underlying Actions</u>

On January 30, 2011, Defendants' employee William McCann was setting up for a trade show on behalf of Freeman Inc. being held at the Hilton located at 1335 6th Avenue, New York, NY ("Hotel").  ECF No. 28 ("Pl's 56.1 Statement") at ¶ 3; *see also* Beer Decl. Ex. 3-5, 26. McCann sustained serious injuries while operating a heavy electric pallet jack in the Hotel's freight elevator.  *Id.*; *see also* Beer Decl. Ex. 6-8.  While exiting the freight elevator, a set of heavy wooden doors which covered the elevator doors fell over and struck McCann in his head and torso.  Beer Decl. Ex. 3-5.

It was following these injuries that McCann filed the Underlying Actions.  Discovery in the Underlying Actions establishes, and the instant Defendants do not contest, that McCann was operating the pallet jack to move materials into the Hotel for the trade show within the scope of his employment with Freeman Inc.  Beer Decl., Ex. 12 at 160:16-162:24.  Hotel employees also testified in the Underlying Actions and one stated that he saw the pallet jack strike the door, causing it to fall, Beer Decl. Ex. 15 at 158:6-161:18 while another stated that he merely heard a loud crack prior to seeing one of the doors strike McCann.  Beer Decl. Ex. 14 at 26:3-23. McCann testified that he was unsure whether the pallet jack struck the door before the door fell and struck him.  Beer Decl., Ex. 17 at 17:12-15.

**STANDARD OF REVIEW**

**I.    Summary Judgment**

Summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  There is no issue of

material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros*

*Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if

it would "affect the outcome of the suit under governing law"). An issue is genuine "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts

may not assess credibility, nor may they decide between conflicting versions of events because

those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d

Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252). At summary judgment, the moving party

has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo*

*v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## DISCUSSION

As a preliminary matter, the Court considers whether Defendants are estopped from

raising arguments as to whether Hilton had additional insured coverage under the Policy. Under

the equitable doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position, especially if it be to the prejudice of the party

who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S.

742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  "Under either federal

law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an

issue that was raised, litigated, and actually decided by a judgment in a prior proceeding,

regardless of whether the two suits are based on the same cause of action."  *Postlewaite v.*

*McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003).  The record clearly establishes that Defendants

successfully procured the dismissal of Hilton's breach of contract for failure to provide

additional insured coverage by arguing that they had in fact procured coverage for Hilton's

benefit.  Beer Decl., Ex. 26 at ¶¶ 7-10, 12.  As such, Defendants are judicially and collaterally

estopped from arguing here that Hilton was never an Additional Insured under the Policy and

Vendor Agreement at all.  Therefore, the operative question in this case is whether the additional

insured provisions of the Policy and Vendor Agreement are applicable to these facts and

enforceable against Defendants.

Plaintiff answers this question in the affirmative and convincingly employs the text of the

Policy and Vendor Agreement to their benefit.  The Policy requires Defendants to reimburse

Plaintiff "up to the Deductible Limit(s)" (here, $3 million) for any amounts Defendant "paid as

damages, benefits, or Medical Payments" inclusive of all "Allocated Loss Adjustment

Expense[s]" (which mostly included litigation costs and expenses) as well as for "any payment

[Plaintiff] make in good faith on behalf of any person or organization insured under any policy to

which this endorsement applies." Beer Decl. Ex. 1 at 52-54.  The Policy's two additional insured

endorsements also provide coverage to "[a]ny person or organization to whom [Defendants]

become obligated to . . . as a result of any contract or agreement [Defendants] enter into" as well

as to "any person or organization to whom [Defendants] become obligated to include as an

additional insured under the policy as a result of any contract or agreement [Defendants] enter into."  Beer Decl. Ex. 1 at 25, 44.

The Vendor Agreement required Defendants to "procure and maintain . . . insurance" throughout the term of their work with Hilton and deliver "[c]ertificates of insurance" to Hilton. Beer Decl. Ex. 2 at 1.  The Agreement also required that those insurance policies "shall name the Indemnitees . . . as additional insureds." *Id.*  Paragraph 14 of the Agreement defined the "Indemnitees" as including "Hotel, Hilton Hotels Corporation, its hotels and each of their owners, partners, subsidiaries, affiliates, franchisees, guests and groups, and each of such persons' or entities' officers, directors, agents, and employees." *Id.* at 6.

Read together, these contractual provisions lend themselves to only a single interpretation: that Defendants are obligated to reimburse Plaintiff for those funds it expended in its defense of Hilton as an additional insured.

Defendants' primary argument in opposition is that "Hilton should never have been afforded Additional Insured Coverage for the accident in question and underlying personal injury action."  Opp at 4.  Interestingly, Defendants raise this argument here despite arguing that Hilton was an additional insured in the Underlying Actions where plaintiff McCann specifically raised negligence claims against Hilton.  Nevertheless, Defendants point to two provisions in the Vendor Agreement to support their argument.  The first is the insurance provision which required Defendants to "by specific endorsement acknowledge the insuring of the contractual liabilities assumed by [Freeman] hereunder in Paragraph 14 of the Standard Terms and Conditions."  Beer Decl. Ex. 2 at 1.  The second contractual provision is Paragraph 14, the indemnification provision, which lays upon Freeman the obligation to indemnify the Indemnitees for any claims "arising out of or in any way connected with this Agreement, the Services

provided by Vendor or any subcontractors of Vendor hereunder or any related act or failure to act by Vendor or Vendor Parties . . . except for the negligence or willful misconduct of the Indemnities [*sic*]." *Id.* at 6.  Defendants read these provisions in conjunction to argue that the Indemnitees would not be covered as additional insureds for their own negligent actions.

Defendants' contractual interpretation is patently unreasonable.  The Vendor Agreement's mandate that Defendants "acknowledge the insuring of the *contractual* liabilities" in the indemnification provision is separate and apart from Defendants' obligation to "procure and maintain" a specifically enumerated "Commercial General Liability" policy with a minimum coverage of $1 million.  *Id.* at 1 (emphasis added).  The insurance provision's invocation of the indemnification provision is relevant as to the commercial general liability policy insofar as the insurance policy must "name the Indemnitees" as defined in the indemnification provision.

As Plaintiff argues, the contractual provisions which set the metes and bounds of Hilton's coverage as additional insureds are the Policy's two additional insured provisions.  Mot. at 11-13.  The language in these provisions clearly states that additional insureds would be covered in circumstances "caused, in whole or in part, by: 1. [Defendants'] acts or omissions; or 2. [t]he acts or omissions of those acting on [Defendants'] behalf."  Beer Decl. 1 at 25; *see also id.* at 44 (limiting additional insured status to "liability arising out of [Defendants'] operations").

There is no dispute here that McCann was operating the electric pallet jack as part of his work for Defendants when his injury occurred, meaning that he was sufficiently acting on Defendants' behalf and as part of their operations.  Yet, there is a dispute between the Parties as to whether McCann "caused, in whole or in part" the accident in question.  Mot. at 14-15; Opp. at 10-12.  Plaintiffs rely primarily on McCann's equivocal testimony stating that he did not recall whether he struck the door as well as the Hotel employees' testimony stating that he saw

McCann strike the doors to support their argument that McCann "caused, in whole or in part" the

accident.  Mot. at 14.  In response, Defendants emphasize the Hotel employees' testimony that

he merely "believed" the pallet jack hit the doors and that McCann did not exit the freight

elevator, but rather had used another smaller one as well as other evidence regarding Hilton's

maintenance of the doors to attempt to raise a question of fact as to whether McCann

proximately caused the accident or whether the accident was caused entirely by the Hotel's

failure to reinforce the doors.  Opp. at 11.

Defendants' arguments find no support under the state law.  New York law does not

require a finding of proximate causation or greater comparative fault for a claim to have "aris[en]

out of" an insured party's acts or omissions.  Rather, "the phrase 'arising out of' is ordinarily

understood to mean originating from, incident to, or having connection with," and "requires only

that there be some causal relationship between the injury and the risk for which coverage is

provided or excluded." *Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.*, 2013 NY Slip Op 189, ¶

3, 102 A.D.3d 756, 759, 959 N.Y.S.2d 204, 208 (App. Div. 2nd Dept.) (citing *Maroney v. N.Y.*

*Cent. Mut. Fire Ins. Co.*, 2005 NY Slip Op 7865, ¶ 3, 5 N.Y.3d 467, 472, 805 N.Y.S.2d 533,

535, 839 N.E.2d 886, 888 (2005)) (internal quotation marks omitted).  The case of *Regal Constr.*

*Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA* is highly instructive.  N.Y.3d 34, 36, 904

N.Y.S.2d 338, 339, 930 N.E.2d 259, 260 (2010).  The general facts in *Regal* mirror those at play

here—the plaintiff, a construction contractor, was an additional insured under one of the

defendant insurance company's general liability insurance policies.  *Regal Constr. Corp.*, 15

N.Y.3d at 36.  Under the insurance policy's additional insured provision, the contractor and its

employees were covered for liability arising out of the contractor's work for the primary insured

party.  *Id.*  The plaintiff contractor had been brought on for "general construction, demolition and

renovation." *Id.*  While walking through the worksite, the plaintiff stepped on a floor joist which had recently been painted and the paint caused him to slip, resulting in a back injury. *Id.* at 36-37.  The injured plaintiff then stated that an unnamed person told him that the primary insured party had painted the joist. *Id.*  Despite the insurance company's arguments to the contrary, the state high court found that that the employee's injury did arise from the additional insured's conduct. *Id.* at 38.  In so holding, the *Regal* Court stated that "the focus of the inquiry is not on the precise cause of the accident but the general nature of the operations in the course of which the injury was sustained" and that sufficient circumstances were present to establish that the injury arose out of the additional insured's "operations notwithstanding [the primary insured party's] alleged negligence." *Id.*  So here too, McCann's accident with the pallet jack "ar[o]se out of" Defendants' acts or omissions notwithstanding McCann's alleged negligence.  Because of this as well as the Parties' agreement that McCann was working on Defendants' behalf, Hilton was entitled to coverage pursuant to both additional insured provisions of the Policy.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED.**


Dated: **March 12, 2024**
     **New York, New York**
                                      **ANDREW L. CARTER, JR.**
                                        **United States District Judge**